R.A. CORBETT TRANSPORT,
INC., Appellant,

v.

J.H. ODEN, Appellee.

No. 12–82–0109–CV.

Court of Appeals of Texas,
Tyler.

Aug. 30, 1984.

J. Gene Bailey, Longview, for appellant.

Charles A. Allen, Allen & Soiomon, Marshall, Crawford Parker, Jr., Carthage, for appellee.

SUMMERS, Chief Justice.

This suit was brought by J.H. Oden (appellee/Oden) against R.A. Corbett Transport, Inc. (appellant/Corbett) to recover property damages resulting from a truck-asphalt distributor collision.

On May 17, 1979, the asphalt distributor owned and operated by Oden, while being used in highway construction in Panola County, was struck by a truck operated by Corbett. Shortly after the accident, the distributor was delivered by Oden to the

repair shop for necessary repairs resulting from the collision.

Oden alleged that negligence on the part of Corbett was a proximate cause of the occurrence in question and that Corbett was liable for the cost of repairs to the distributor, "reasonable work value" while the distributor was in the repair shop, and damages for total destruction of the distributor when it was consumed later by fire in July 1980. Corbett denied liability for any damages alleged by Oden and further pleaded that Oden failed to take action to minimize his alleged damages.

Trial was to a jury which found that the acts of negligence of Corbett's driver were the proximate cause of the accident; that the cost of reasonable and necessary repairs to the distributor was $3,037.62; that prior to the accident the distributor made net profits of $6,800 per day; that the distributor would have been operated by Oden on 22 days of the 31½ days the distributor was in the shop for repairs; that the accident of May 17, 1979, was not the proximate cause of the fire destroying the distributor in July 1980; and that Oden did not fail to minimize his damages.

Based on the jury's verdict, the trial court rendered judgment in favor of Oden and against Corbett for the total sum of $152,637.62 ($3,037.62 for repairs and $149,600.00 for loss of net profits).

Corbett does not appeal from the jury's finding of liability, the finding that the distributor would have been operated by Oden on 22 days of the 31½ days in question, nor the cost of repairs of $3,037.62. He appeals only the jury's findings that the distributor made net profits of $6,800 per day and that Oden did not fail to minimize his damages.

The appellant brings two points of error. In its first point, Corbett asserts that there is no evidence to support the jury's finding that the net profit of the asphalt distributor prior to the accident was $6,800 per day and that said finding is not supported by sufficient evidence and is against the great weight and preponderance of the evidence. Appellant's point is based on the jury's answer to Special Issue No. 3, which issue and the jury's response read as follows:

### SPECIAL ISSUE NO. 3

Find from a preponderance of the evidence the net profits, if any, the distributor made prior to the accident on a daily basis.

Answer in Dollars and Cents, if any, per day.

Answer: $6,800.00

In connection with this issue, the court's charge contained the following instructions:

You are instructed that if it is proven that a loss of profit is a natural and probable consequence of the accident in question, and the amount, if any, of lost profits is shown with sufficient certainty, then you may make an award for lost profits, if any you find. However, a finding of any amount of lost profits must not be based on evidence which is uncertain and speculative.

You are further instructed that the term 'net profits' is what remains in the conduct of a business after deducting from its total receipts all of the expenses incurred in carrying on the business. In determining the lost profits, if any, you may consider the net profits, if any, said distributor earned in the not too remote past in determining from the evidence the loss of earnings of said distributor during the 31½ day period in question.

The record reflects that at the time of the accident, J.H. Oden Construction Company was an established business at Waskom, Texas, doing road construction work in the East Texas area. Mrs. Oden kept the books for the business. Oden's journal records, prepared by Mrs. Oden, showing cash receipts and cash disbursements for the years 1978, 1979 and 1980, were introduced into evidence. Mrs. Oden testified that she calculated the value of the asphalt distributor to the construction at "a very minimal amount" of $6,800 a day, that the machine can produce a net profit of $6,800 for each work day, and that she made this

calculation from four jobs done by Oden before, at the time of, and after, the accident. When asked how she arrived at the figures, she testified:

A   Okay. I took the total amount of the job, the estimate paid, final estimate total of work done—

Q   Okay.

A   Subtracted the payroll, the materials and the fuel and totalled how many days it took us to do it.

Q   Okay.

A   And this is how I arrived at each of these.

Larry Sanders, appellee's accountant, testified that he was a certified public accountant and had formerly been in the road construction business. He testified he had done professional work for Oden, including preparation of Oden's income tax returns for the years 1977, 1978, 1979 and 1980. He prepared two schedules (identified as Plaintiff's Exhibit 6) from Oden's cash receipts and disbursement's journal listing the contract amounts and direct charges (labor, fuel and material) on two sets of seal coat jobs done by Oden. After subtracting the direct charges from the contract amounts and dividing the remainder on each job by the number of days it took to complete the work, he calculated earnings on one schedule of $7,181 per day and of $7,851 per day on the other. He stated that to earn this money on seal coat work, it took not only the asphalt distributor, but also other equipment, including a chip spreader, dump trucks, a loader and brooms; that these figures represent the lost revenue over and above the direct expenses; and that none of the continuing and fixed expenses of doing business were allocated. On cross-examination he was asked about *net* profits, and testified:

Q   Well, let me tell you this. I think that the Court is going to instruct the jury that the relevant figure, what they should consider in awarding damages in this is lost profits, lost net profits.

A   Well, the Court will have to hire somebody smarter than me to tell them what it is.

Corbett developed testimony which dealt with the issue of net profits and introduced into evidence Oden's income tax returns for the years 1977 through 1980. In summary form, these returns show:

| Year | Gross Revenue Received | Net Profit |
|------|------------------------|------------|
| 1977 | $   630,041 | $  28,989 |
| 1978 | 805,948 | 57,953 |
| 1979 | 766,689 | 64,326 |
| 1980 | 1,866,532 | 102,670 |

The 1979 tax return reflects the following expenses which were not included in the calculations made by Oden's witnesses:

| | | |
|---|---|---|
| 1. | Car & Truck Expenses | $ 79,000 |
| 2. | Insurance | 15,400 |
| 3. | Interest | 47,784 |
| 4. | Repairs | 121,143 |
| 5. | Taxes | 7,000 |
| 6. | Telephone | 1,000 |
| 7. | Utilities | 3,400 |
| 8. | Equipment Rental | 70,989 |
| | Total | $345,716 |

In addition, there is the testimony of Dean Sherrill (a witness called by appellant), who is a certified public accountant and owner of a construction company. Sherrill testified that his company has done highway construction and that from a review of Oden's income tax returns for the years 1977 through 1980, he had formed an opinion that the average daily net income for Oden's construction business would be between $300 and $500. He testified that there are expenses not listed in Plaintiff's Exhibit 6 prepared by Sanders which he would consider in computing net profit. He would consider repairs to equipment, overhead, both direct and indirect, and general administrative expenses. He testified he would consider those items because they are reasonable and necessary expenses of doing business and are necessary for determining the net profit for both financial and tax purposes.

The generally accepted rule is that where it is shown that a loss of profit is a natural and probable consequence of the act or omission complained of, and that amount is shown with sufficient certainty,

there may be a recovery therefor. Anticipated profits cannot, however, be recovered where they are dependent upon uncertain and changing conditions, such as market fluctuations or a change of business, or where there is no evidence from which they may be intelligently estimated. Evidence to establish profits must not be uncertain or speculative. It is not necessary that profits should be susceptible to exact calculation; it is sufficient that there be data from which they may be ascertained with a reasonable degree of certainty and exactness. *Southwest Battery Corporation v. Owen*, 131 Tex. 423, 115 S.W.2d 1097 (1938); *General Supply and Equipment Co., Inc. v. Phillips*, 490 S.W.2d·913, 921 (Tex.Civ.App.—Tyler 1972, writ ref'd n.r. e.).

The term "net profits" is, " 'to a large degree, self-explanatory and implies, generally speaking, what remains in the conduct of a business after deducting from its total receipts all the expenses incurred in carrying on the business.' " *Mangham v. Hall*, 564 S.W.2d 465, 469 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.); *G & W Marine, Inc. v. Morris*, 471 S.W.2d 644 (Tex.Civ.App.—Beaumont 1971, no writ).

In *Giles v. Rayburn*, 173 S.W.2d 371, 373 (Tex.Civ.App.—San Antonio 1943, no writ), the court said:

"[I]t is academic that, in general, net profits of an operation are ascertainable by deducting the actual expenses from the gross earnings of the business. The difference between those items constitutes the net profits...."

■ In reviewing the evidence, and the reasonable inferences therefrom, in its most favorable light and rejecting all evidence and inferences to the contrary, we deem that there is some evidence to support the jury's answer to Special Issue No. 3. However, when we consider and weigh all the evidence in the case, we find that said finding is not supported by factually sufficient evidence and is against the great weight and preponderance of the evidence. The law's requirement that lost profits must be established with reasonable certainty demanded that Oden, as plaintiff, prove by evidence of probative value all "factual data which supported [his] claim to lost profits" upon which his alleged loss could be intelligently ascertained. *International Harvester Company v. Kesey*, 507 S.W.2d 195 (Tex.1974). The plaintiff did not meet his burden in this case. Appellant's first point is sustained.

In its second point, Corbett contends that the evidence is insufficient to support the jury's finding that Oden did not fail to minimize his damages and that said finding is against the great weight and preponderance of the evidence. Corbett's point is based on the jury's answer to Special Issue No. 8, which issue and the jury's response read as follows:

### SPECIAL ISSUE NO. 8

Do you find from a preponderance of the evidence that Plaintiff failed to take such action to reduce or minimize his damages, if any, resulting from the loss of use of the asphalt distributor, as a reasonable person would have taken under the same or similar circumstances?

Answer "He failed to minimize his damages" or "He did not fail to minimize his damages."

ANSWER: "He did not fail to minimize his damages."

■ A defendant who asserts that a plaintiff has failed to prevent or minimize damages has the burden of proving not only the lack of diligence, but also the amount by which the damages were increased by such failure. *United Furniture & Appliance Co. v. Johnson*, 456 S.W.2d 455, 459 (Tex.Civ.App.—Tyler 1970, no writ); *Otto Goedecke, Inc. v. Henderson*, 388 S.W.2d 728, 730 (Tex.Civ.App.—Amarillo 1965, writ ref'd n.r.e.); 28 TEX. JUR.3rd *Damages* § 33 (1983).

Oden testified that he had the distributor carried to the shop in Longview (where the distributor was purchased) for repairs either the afternoon of the collision or the next morning; that Conley-Lott-Nichols said they would have it repaired within a

week if they could secure the parts, and he asked them to fly the parts in; that he called every equipment company he knew trying to locate a distributor to rent but was unable to find one; that within a week or more after the accident he secured a substitute distributor by borrowing one from H.B. Porter; and that after spending two or three days attempting to repair this borrowed machine, he was not successful in getting this distributor to work properly and returned it to Mr. Porter.

■ Upon a careful examination of the entire record we cannot say that the evidence is insufficient to support the answer of the jury to Special Issue No. 8 nor that the answer thereto is against the great weight and preponderance of the evidence. Appellant's second point is overruled.

The judgment of the trial court awarding the sum of $149,600 (calculated at $6,800 per day for 22 days) as damages for lost net profits is reversed, and the cause as to net profit losses is severed and remanded to the trial court for a new trial. In all other respects, the judgment of the trial court is affirmed. *See City of Austin v. Teague,* 570 S.W.2d 389, 395 (Tex.1978).