**REGENCY ADVANTAGE LIMITED PARTNERSHIP, Ronald Berman, and Marc Eller, Appellants,**

v.

**The BINGO IDEA–WATAUGA, INC. and Steven S. Bailey, Appellees.**

No. 2–94–046–CV.

Court of Appeals of Texas, Fort Worth.

Jan. 25, 1995.

Rehearing Overruled April 20, 1995.

Francis Pan, Law Offices of Francis Pan, Austin, for Appellant.

Marc Eller, Ronald Berman, Regency Advantage Limited, Regency Advantage Limited Partnership, pro se.

David F. Bragg, Bragg, Chumlea, McQuality, Smithers & Curry, Austin, Joe Chumlea, Bragg, Chumlea, McQuality, Smithers & Curry, Dallas, Don Marshall Chrestman, Vick, Chrestman & Carney, Weatherford, for Appellee.

Before DAY, WEAVER and CLYDE R. ASHWORTH (Retired, Sitting by Assignment), JJ.

## OPINION

DAY, Justice.

Regency Advantage Limited Partnership, Ronald Berman, and Marc Eller (Regency) appeal both a partial summary judgment and final judgment on a lease and commission agreement respectively. We affirm in part and reverse and render judgment in part.

Shannon Management Services, Inc. (Shannon) and Texas American Bank (TAB) entered into a commission agreement on March 7, 1989. Shannon, however, assigned the commission agreement to Steven Bailey. After entering into the commission agreement, TAB leased some commercial real estate space to Bingo Idea–Watauga, Inc. (Bingo) in May 1989.

According to the lease:

Tenant [Bingo] has sixty (60) days from the date of final execution of this lease to secure and deliver to Landlord[TAB] (in writing) all necessary approvals from the Texas Comptrollers Office and any other licensing required to legally operate a bingo facility. Failure of [Bingo] to deliver the above approvals within said sixty (60) days shall render this lease agreement null and void. [TAB] shall have forty five (45) days from receipt of all above approvals to fulfill [TAB's] responsibility for the work specified in Exhibit "D–1".

The Texas Comptroller's Office issued Bingo a temporary authorization to lease bingo premises from June 10, 1989 until August 9, 1989. Bingo notified TAB of the temporary authorization. TAB, however, failed to build-out the space for the bingo facility. Bingo received two additional temporary licenses. TAB still failed to build-out the space.

TAB then sold the property to Regency on November 10, 1989. Under the terms of the deed, TAB assigned Regency all the tenant leases. Regency, however, informed Bingo that it was not going to build-out the leased space or supply certain bingo equipment required by exhibit D–1 of the lease. Afterwards, Regency filed this lawsuit against Bingo and Bailey to declare the lease and commission agreement invalid, or alternatively, to recover monetary damages against Bingo for Bingo's alleged breach of the lease. Bingo counterclaimed, alleging Regency was liable for TAB's breach of the lease. Bailey then intervened, alleging Regency was also liable for TAB's breach of the commission agreement.

The trial court entered a partial summary judgment in favor of Bingo finding that TAB breached the lease. All other issues went to trial and resulted in a judgment against Regency, Berman, and Eller for damages, attorneys' fees, and prejudgment interest on lost profits.

In point of error two, Regency asserts the trial court erred in granting partial summary judgment for Bingo, arguing that: (1) Bingo failed to specifically plead and prove the condition precedent of delivery of the temporary license to TAB;[1] (2) Bingo and Regency lacked privity of contract, which precluded any action for breach of contract by Bingo; (3) Bingo failed to conclusively prove that the temporary authorization complied with the lease requirements; (4) Bingo made performance by TAB impossible; and (5) issues of material fact precluded the partial summary judgment. We disagree.

First, Regency's claim that Bingo failed to plead and prove the condition precedent of delivery of the temporary authorization to TAB lacks merit. Wallis, who was a vice-president of TAB and negotiated the lease between TAB and Bingo, admitted that he received notification by letter that Bingo had received a temporary authorization from the State to operate a bingo facility on the leased premises.[2] Furthermore, the letter included copies of the temporary authorization certificate and correspondence between Bingo and the Texas Comptroller's Office. Thus, we find that because Wallis admitted receiving the letter, the notification was delivered.

Regency also argues that Bingo's summary judgment motion violated Rule 166a(c) because Bingo failed to plead and prove delivery. See TEX. R. CIV. P. 166a(c); McConnell, 858 S.W.2d at 341.[3] We disagree. Bingo's motion states the grounds for

summary judgment as follows: (1) Bingo seeks a partial summary judgment on the issue of breach of the lease agreement; (2) Bingo complied with the lease condition to obtain the necessary approval to operate a bingo facility; (3) the temporary authorization fulfilled the lease condition; (4) Bingo satisfied *all requirements of the lease agreement and amendment;* (5) TAB and Regency failed to build-out the leased space; and (6) Regency was liable for the breach. Bingo's motion clearly meets the requirements of Rule 166a(c). *Id.*

Next, Regency claims that lack of privity of contract between Regency and Bingo precluded Bingo from any action for breach of the lease by TAB. We disagree. Generally, a transferee of a landlord's reversion is not liable for a breach of a landlord's covenant that occurred before the transfer. *See* 3 MILTON R. FRIEDMAN, FRIEDMAN ON LEASES § 36.2 (3d ed.1990) (citing numerous authorities). Furthermore, "the grantee of the original lessor cannot recover for breach by a tenant which occurred before the transfer, absent an express assignment of the cause of action" by the original lessor to the grantee. *Richey v. Stop N Go Markets of Texas,* 654 S.W.2d 430, 432 (Tex.1983) (citing FRIEDMAN, § 36.2, and other authorities). This, however, refers to where a breach occurs at one particular point during the ownership of the original owner, not where a breach continues to occur after the original owner's grantee acquires title to the property. *See* FRIEDMAN, § 36.2.

Here, both TAB and Regency breached the lease covenant that required the build-out of the commercial space. Accordingly, Regency would be liable for the breach of the lease, but only for damages that occurred

1. *See McConnell v. Southside School Dist.,* 858 S.W.2d 337, 341 (Tex.1993).

2. Wallis stated in his affidavit:

I have attached to this affidavit as Exhibit "C," a true and correct copy of *a letter which I received* from Steven S. Bailey informing me of the issuance of the temporary authorization [to Bingo from the State], and of the remaining requirements for the issuance of an annual license. [Emphasis added.]
Regency presented Wallis's affidavit in support of its motion for summary judgment and in opposition to Bingo's motion for summary judgment.

3. *McConnell* holds that a summary judgment motion must state the grounds upon which the movant is relying in the motion or the motion is legally insufficient as a matter of law. *Id.* at 341.

after TAB assigned the lease to Regency.[4] *See id;* DAVID A. THOMAS, 5 THOMPSON ON PROPERTY § 42.03(d)(2) (Thomas ed.1994). Therefore, Regency is liable as the owner and landlord of the property for the breach of the lease because the covenant to build-out the property ran to Regency, and Regency breached the covenant by failing to build-out the space.

■ Next, Regency claims the temporary authorization was inadequate to meet Bingo's condition precedent under the lease. We disagree. The lease required the following:

> Tenant has sixty (60) days from the date of final execution of this lease to secure and deliver to the landlord (in writing) all necessary approvals from the Texas Comptrollers Office and any other licensing required to legally operate a bingo facility.

Under the Bingo Enabling Act, a holder of a temporary authorization is legally entitled to lease premises for conducting bingo games. TEX. REV. CIV. STAT. ANN. art. 179d, §§ 11(b), 2(17) (Vernon Pamph.1995). Bingo obtained a temporary authorization and notified TAB of that temporary authorization. Therefore, Bingo met the condition precedent of obtaining the necessary licensing to legally operate a bingo facility.

■ Additionally, Regency claims Bingo failed to prove that TAB or Regency approved the construction plans, thus, its performance was made impossible because joint approval between Bingo and the landlord was required for the build-out. Regency, however, failed to specifically deny the lack of performance of this condition precedent.[5] Therefore, Bingo was relieved of any obligation to prove the condition precedent of mutual approval of the construction plans. *See* TEX. R. CIV. P. 54.

■ Finally, Regency asserts the trial court improperly granted summary judgment because issues of material fact existed. Regency, however, already raises the following issues in support of this: (1) whether the temporary authorization satisfied the lease condition; (2) whether approved construction plans were submitted; and (3) questions dealing with whether Regency prevented Bingo from performing and inquiring when the first default occurred. These fact issues have already been discussed and disposed of above. Furthermore, Regency never raised the other fact issues in its response to the motion for summary judgment, and thus, Regency cannot raise them for the first time on appeal to defeat the trial court's granting of summary judgment in favor of Bingo. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 677 (Tex.1979). We overrule point of error two.

In point of error one, Regency asserts the trial court erred by not granting its motion for summary judgment. Because we hold the trial court properly granted summary judgment in favor of Bingo on the lease liability issue, we overrule point of error one.

■ In point of error three, Regency asserts the trial court erred in granting final judgment for Bailey on his claim for breach of the commission agreement because no privity of contract existed between Regency and Bailey on the commission agreement. For Regency to be liable on the commission agreement, Bailey must have proved that privity of contract existed between Regency and himself. *C & C Partners v. Sun Exploration & Prod. Co.,* 783 S.W.2d 707, 721 (Tex.App.—Dallas 1989, writ denied) ("Privity is an essential element necessary to any recovery in an action based on contract. . . . The plaintiff has the burden of proving that the defendant has obligated himself under the contract."). Bailey expressly stated that Regency was not a party to the agreement; however, Bailey claimed that Regency as-

---

4. Regency would have to expressly assume the liability of TAB to be liable for damages arising from TAB's breach. *See Lone Star Gas v. Mexia Oil & Gas,* 833 S.W.2d 199, 202 (Tex.App.—Dallas 1992, no writ) ("Privity of estate is the foundation of the assignee's liability on covenants that run with the land. Thus, the assignee is not liable for breaches that took place before the assignment to him."); DAVID A. THOMAS, 5

THOMPSON ON PROPERTY § 42.03(d)(2) (Thomas ed.1994); *Richey,* 654 S.W.2d at 432.

5. Regency only specifically denied the following condition precedent in its answer: Bingo did not obtain and deliver all the necessary approvals from the Texas Comptroller to legally operate a bingo facility.

sumed the commission liability by agreeing to the assignment of the leases and by the language in the lease and the commission agreement stating that each agreement applies to assignees of the original parties. This alone is not enough. In order for Regency to be liable for the commission agreement signed by TAB, Regency must have expressly agreed to an assignment of the commission agreement. *See Lone Star Gas,* 833 S.W.2d at 201 ("The acceptance of an assignment 'subject to' a specified claim of a third person is not an implied promise by the assignee to pay that claim. There must be some express promissory words, or words of 'assumption,' on the part of the assignee."); *see also Hall v. Arnett,* 31 S.W.2d 506, 508 (Tex.Civ.App.—Amarillo 1929, writ dismissed); *Potts v. Burkett,* 278 S.W. 471, 472 (Tex.Civ.App.—Eastland 1926, no writ). Regency did not expressly agree to such an assignment. Thus, Bailey failed to prove privity of contract between Regency and himself. We sustain point of error three and reverse and render judgment that Regency is not liable to Bailey on the commission agreement.

In point of error four, Regency asserts that Bingo and Bailey's agreements with TAB are void and unenforceable because 12 U.S.C.A. § 1823(e) (1989), which codified the *D'Oench, Duhme* doctrine,[6] prevents claims, counterclaims, and affirmative defenses against the FDIC or any entity taking assets from the FDIC.[7] Regency asserts the property in question passed through the FDIC before Regency obtained it. Section 1823(e) and *D'Oench, Duhme,* however, are subject to the "bilateral obligations exception." *FDIC v. Hamilton,* 939 F.2d 1225, 1231 (5th Cir.1991) (citing *Howell v. Continental Credit Corp.,* 655 F.2d 743, 746 (7th Cir.1981)). According to the bilater-

al obligations exception, neither *D'Oench, Duhme* nor section 1823(e) operates to void contractual obligations sought to be imposed on the FDIC "where the document the FDIC seeks to enforce is one ... which facially manifests *bilateral* obligations and serves as the basis of the lessee's defense." *Howell,* 655 F.2d at 746.[8]

Here, the lease agreement contains bilateral obligations. Furthermore, Regency, the landlord, sued to enforce the obligations allegedly owed to it under the lease. Therefore, we hold that the bilateral obligations exception bars both the *D'Oench, Duhme* doctrine and section 1823(e) from shielding Regency from liability in this case. We overrule point of error four.

In point of error five, Regency claims the trial court erred in granting final judgment for Bingo on its claim for lost future profits. We disagree. Recovery of lost profits requires the injured party to present competent evidence that shows with reasonable certainty what the loss was. *Texas Instruments, Inc. v. Teletron Energy Management, Inc.,* 877 S.W.2d 276, 279–80 (Tex.1994); *Szczepanik v. First Southern Trust Co.,* 883 S.W.2d 648 (Tex.1994). A new business can still recover lost profits unless "profits which might have been made from such businesses are not susceptible of being established by proof to that degree of certainty which the law demands.... When there are firmer reasons to expect a business to yield a profit, the enterprise is not prohibited from recovering merely because it is new." *Texas Instruments,* 877 S.W.2d at 280. Here, Bingo presented an expert in the areas of corporate finance and financial planning. Among other things, Bingo's expert testified about the following: (1) the reasons the Duncanville location could be used to

**6.** *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942).

**7.** *See Aero Support Systems, Inc. v. FDIC,* 726 F.Supp. 651, 654 (N.D.Tex.1989).

**8.** In *Howell,* a bank promised to purchase certain equipment that it would lease to Howell. The various leases contained in the bank's records required the bank to obtain title to the equipment. When the FDIC sued Howell to col-

lect rent payments under the leases, Howell sought to defend on the ground that the bank had never obtained title to the equipment and she had never leased it. The court concluded that Howell should be allowed to assert this defense and that *D'Oench, Duhme* was inapplicable. *Id; see FDIC v. O'Neil,* 809 F.2d 350, 354 (7th Cir.1987) (noting that the dispositive fact in *Howell* was that "[t]he conditions that Mrs. Howell sought to enforce against the FDIC's asset, [the lease] ... appeared in the [lease] itself.").

determine the lost profits at Watauga; (2) the technique and calculations he used to determine the amount of lost profits with reasonable certainty; and (3) why doing the calculation that way was proper. Therefore, after reviewing the expert's testimony and all other evidence in the case, we find the trial court had sufficient evidence to determine the amount of lost profits with reasonable certainty. *See id.*

 Regency also asserts the trial court should have denied Bingo recovery of its lost profits because Bingo failed to mitigate its damages. A tenant deprived of the use of leased premises has a duty to mitigate its damages. *Frank v. Kuhnreich*, 546 S.W.2d 844, 851 (Tex.Civ.App.—San Antonio 1977, writ ref'd n.r.e.); *Birge v. Toppers Menswear, Inc.*, 473 S.W.2d 79, 86 (Tex.Civ. App.—Dallas 1971, writ ref'd n.r.e.). The burden of proving failure to mitigate, however, is on the defendant (Regency, in this case), who must also show the amount by which the plaintiff's damages were increased by the failure to mitigate. *Texas Dep't of Human Servs. v. Green*, 855 S.W.2d 136, 151 (Tex.App.—Austin 1993, writ denied); *Sorbus, Inc. v. UHW Corp.*, 855 S.W.2d 771, 775 (Tex.App.—El Paso 1993, writ denied). Here, Regency proved that Bingo failed to mitigate its damages. Regency, however, never offered any testimony or proof on how much Bingo's damages increased because of its failure to mitigate. Therefore, Regency failed to meet its burden of proof. We overrule point of error five.

 In point of error six, Regency asserts the trial court erred in granting final judgment for Bingo and Bailey for attorneys' fees. Because of our previous ruling on point of error three, we reverse and render judgment that Regency is not liable to Bailey for attorneys' fees.

As to Bingo, Regency asserts that Bingo failed to meet the requirements necessary to recover attorneys' fees. Tex. Civ. Prac. & Rem. Code Ann. §§ 38.001, 38.002 (Vernon

1986). Section 38.002 provides that three requirements must be met before a party is entitled to attorneys' fees under section 38.001:

(1) the claimant must be represented by an attorney;

(2) the claimant must present the claim to the opposing party or to a duly authorized agent of the opposing party; and

(3) payment for the just amount owed must not have been tendered before the expiration of the 30th day after the claim is presented.

*Id.* § 38.002.

The purpose of the requirement of presentation of a claim is to allow the party against whom the claim is asserted an opportunity to pay the claim within thirty days after they have notice of it without incurring an obligation for attorneys' fees. [Citation omitted.] Further, no particular form of presentment is required, as the statute requiring presentment is to be liberally construed to promote its underlying purpose.... *Even though no particular form of presentment is required, the party making the claim must allege in its pleadings that presentment was made and that the party to which the presentment was made failed to tender performance.*

*Criton Corp. v. Highlands Ins.*, 809 S.W.2d 355, 358 (Tex.App.—Houston [14th Dist.] 1991, writ denied) (emphasis added).[9]

 Bingo failed to assert in its pleadings that presentment occurred. Bingo, however, claims that it was not required to plead presentment because it specifically pleaded that all conditions precedent were met, and Regency failed to specifically deny that presentment did not occur. *See* Tex. R. Civ. P. 54. We find no authority to support Bingo's claim that Rule 54 would bar Regency from asserting that Bingo failed to meet the requirements of section 38.002.

Furthermore, Bingo asserts that it was not required to plead presentment because Re-

---

9. *See also Jim Howe Homes, Inc. v. Rogers*, 818 S.W.2d 901, 904 (Tex.App.—Austin 1991, no writ); *Carr v. Austin Forty*, 744 S.W.2d 267, 271 (Tex.App.—Austin 1987, writ denied); *cf. Boy Scouts of Am. v. Responsive Terminal Sys., Inc.*,

790 S.W.2d 738, 749 (Tex.App.—Dallas 1990, writ denied) (section 38.002 does not differentiate between a plaintiff and a defendant, so a defendant must still make a formal presentment before filing a counterclaim).

gency stated in its second amended petition that Bingo told it the lease had not been terminated and that TAB had breached the lease by failing to complete the build-out and tender equipment. Section 38.002 and the case law interpreting it, however, still require Bingo to specifically plead the requirement of presentment. TEX. CIV. PRAC. & REM. CODE ANN. § 38.002 (Vernon 1986). Bingo failed to do this. Thus, we find no merit in Bingo's arguments that it is not required to specifically plead presentment.

Bingo, however, also argues the trial court based the award of attorneys' fees on section 37.009, not section 38.001. TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (Vernon 1986). Section 37.009 allows the trial court to award reasonable and necessary attorneys' fees in a declaratory judgment action.[10] *Id.* Clearly the trial court did not base the attorneys' fees award on section 37.009 since it awarded the attorneys' fees based on the contingency fee amount, not the actual amount incurred.[11] Therefore, since the trial court based the award of attorneys' fees on section 38.001, and Bingo failed to meet the requirements of that section, we sustain point of error six. We reverse and render judgment that Regency does not owe attorneys' fees to Bingo.

◼ In point of error seven, Regency claims the trial court erred in making findings of facts and conclusions of law on the summary judgment issue. Summary judgment disposed of the liability issue under the lease, but the trial court still conducted a trial on damages and attorneys' fees. The findings of fact and conclusions of law were proper on the issues of attorneys' fees and damages, but were not proper on the summary judgment proceeding. *Samaniego v. El Paso Towing, Inc.,* 836 S.W.2d 702, 704 (Tex.App.—El Paso 1992, writ denied) (citing *Cotton v. Ratholes, Inc.,* 699 S.W.2d 203 (Tex.1985)). Therefore, we sustain point of error seven, and disregard any findings of

fact and conclusions of law relating to the summary judgment proceeding.

◼ In point of error eight, Regency asserts the trial court erred in admitting and excluding certain evidence at trial. Regency, however, fails to discuss the facts or authority on why error exists, and where it does discuss some of the facts and authority, it does so in only a cryptic manner. Therefore, Regency's brief is woefully insufficient under the requirements of TEX. R. APP. P. 74, and thus, any error is waived. TEX. R. APP. P. 74(f). We overrule point of error eight.

◼ In point of error nine, Regency asserts the trial court erred in awarding prejudgment interest on lost profits and attorneys' fees. Because of our holding in point of error six, we reverse and render judgment to hold that Regency does not owe any prejudgment interest on attorneys' fees. We, however, sustain the trial court's award of prejudgment interest on the future damages. *See C & H Nationwide, Inc. v. Thompson,* 810 S.W.2d 259, 276 (Tex.App.—Houston [1st Dist.] 1991, writ granted).[12] We sustain in part and overrule in part point of error nine.

◼ In point of error ten, Regency claims the trial court erred in granting personal judgments against Ronald Berman and Marc Eller in excess of the net property value instead of judgments against the property only. Regency relies on provisions in the lease limiting its liability to support this point. These lease provisions, however, constitute an affirmative defense under TEX. R. CIV. P. 94 because Berman and Eller are attempting to avoid actual damages by arguing that their liability is predetermined and limited. *See Borders v. KRLB, Inc.,* 727 S.W.2d 357, 359–60 (Tex.App.—Amarillo 1987, writ ref'd n.r.e.). Therefore, Berman and Miller should have pled this contractual limitation to their liability. TEX. R. CIV. P.

10. Regency sought a declaratory judgment on the lease.

11. The court awarded approximately forty percent of Bingo's actual damages found, including prejudgment interest, as attorneys' fees. The trial court based the forty percent on testimony establishing Bingo's contingency fee.

12. The supreme court affirmed this particular point but reversed the case on other grounds in an opinion not final as of this date because of a pending motion for rehearing. *See* 903 S.W.2d 315, 323–25 (1994).

94. They did not, so it is waived. We overrule point of error ten.

In summary, we affirm in part and reverse and render judgment in part. We reverse and render judgment as follows: (1) Regency is not liable to Bingo for attorneys' fees; (2) Regency is not liable for damages or attorneys' fees to Bailey; (3) Regency is not liable for prejudgment interest on attorneys' fees; and (4) any findings of fact and conclusions of law relating to the trial court granting Bingo's partial summary judgment motion are disregarded. We affirm the trial court's judgment in all other respects.

WEAVER, J., not participating.