**HYGEIA DAIRY CO., Appellant,**

v.

**Abelardo GONZALEZ, Appellee.**

**No. 04–96–00651–CV.**

Court of Appeals of Texas,
San Antonio.

April 21, 1999.

Paul W. Nye, Audrey Mullert Vicknair, Roberta S. Dohse, Chaves, Gonzales & Hoblit, L.L.P., Corpus Christi, for Appellant.

Clyde L. Wright, Jr., Dana W. Evans, Erck & Wright, L.L.P., Alice, Timothy Patton, Pozza & Patton, San Antonio, for Appellee.

Before PHIL HARDBERGER, Chief Justice, TOM RICKHOFF, Justice, ALMA L. LÓPEZ, Justice, CATHERINE STONE, Justice, PAUL W. GREEN, Justice, SARAH B. DUNCAN, Justice and KAREN ANGELINI, Justice, en banc.

## ON APPELLEE'S MOTION FOR REHEARING EN BANC

Opinion by: TOM RICKHOFF, Justice.

Appellee's motion for rehearing *en banc* is granted. We withdraw the panel opinion of September 23, 1998 and substitute this *en banc* opinion in its place.

In this action over the sale of a herd of dairy cattle, we find error in the trial court's failure to instruct the jury on mitigation.

Hygeia Dairy Co. ("Hygeia") sold 51 head of dairy cattle to Abelardo Gonzalez in April 1991; these cattle were incorporated into his existing herd. Gonzalez later bought some more cattle from another supplier. In 1993 and early 1994, Gonzalez's cattle began to die, forcing him to liquidate his herd at the end of 1994.

Gonzalez filed suit against Hygeia alleging negligence and gross negligence for failing to disclose that Hygeia's herd had contained diseased cattle. Trial was to a jury, which found Hygeia negligent and grossly negligent and Gonzalez 35% contributorily negligent. The jury assessed actual damages at $291,000 and punitive damages at $3,000,000. The trial court reformed the punitive damage award to conform to TEX. CIV. PRAC. & REM.CODE ANN. § 41.007, subtracted Gonzalez's contributory negligence from the actual damages

award, added prejudgment interest and entered judgment for $1,419,501.98.

In four issues Hygeia complains that: 1) the trial court erred in not including an instruction on mitigation of damages; 2) there is legally or factually insufficient evidence to support a finding of gross negligence; 3) Hygeia owed no duty to disclose the presence of common diseases in the herd of cattle in question; 4) a new trial should be ordered because of deficiencies in the statement of facts. Because we find that Hygeia was entitled to an instruction on mitigation of damages, we reverse the judgment of the trial court and remand the case for retrial.

### FACTS

Hygeia sold Gonzalez 51 head of cattle in April 1991. Gonzalez testified he was seeking to improve his herd's average milk production with the purchase and so picked out the best milk producers. Hygeia officials testified their dairy had decided to get out of the raw milk business and was in the process of liquidating its 1800-cow milking herd.

Gonzalez went to Hygeia's dairy operation and picked milk cows according to their milk production. He testified he asked the manager for "good cattle that are healthy and are producing milk." Gonzalez got milk production records for the cows he selected and brucellosis test results for most; he testified other promised medical records were never provided.

The crux of Gonzalez's cause of action is Hygeia's admission that two diseases—bovine leukosis and Johne's disease—were present in its herd at the time of Gonzalez's purchase. Testimony showed that bovine leukosis, also known as bovine leukemia, is a viral disease transmitted by parasites which causes cancerous nodules in the bodies of afflicted cattle and that Johne's disease is a bacterial disease characterized by a "wasting" of an afflicted animal and bloody diarrhea. According to experts at trial, these diseases are incura-

ble, and it is often easier to slaughter a herd and start over than to eradicate the diseases from an existing herd. Testimony also showed both diseases can be difficult to detect, in part because they can reside in an animal without causing symptoms for extended periods of time. Hygeia's experts argued these diseases are prevalent in many Texas dairy herds and that they can be managed with an aggressive management program, which would include culling cattle that show symptoms. Gonzalez's former veterinarian, Dr. Michael Vickers, testified he never treated a cow in Gonzalez's herd for these diseases prior to his purchase of cattle from Hygeia; neither he nor Gonzalez's current veterinarian, Dr. Glynn Wilkinson, said they had seen these diseases around Falfurrias.

Gonzalez testified his cattle started to drop off in milk production in 1993, and some of his cows began to suffer from bloody diarrhea and "wasting." Both Gonzalez and Wilkinson testified they had the most trouble with cattle from the Hygeia Dairy; in May 1994, seven of eight former Hygeia cattle tested positive for bovine leukosis. Gonzalez estimated that by July of 1994 more than half of the Hygeia cattle were dead. However, no autopsies were done on cows that were lost, and no blood testing was done before May 1994. After seeing production drop below his break-even point, even with reinforcements from another dairy, Gonzalez sold his herd for slaughter in December 1994.

### THE RECORD

In its fourth issue, Hygeia complains that the record is too inaccurate to be relied upon, and that it should therefore be granted a new trial. TEX.R.APP. P.34.6(f). This court examined the matter of the reporter's record in a mandamus proceeding and found that the court reporter satisfied her obligation to submit and certify the record in this case. Hygeia does not offer any evidence that the record is indeed missing, deficient, lost or destroyed; without such evidence, it would be improp-

er for this court to reverse and remand. *See Owens–Illinois, Inc. v. Chatham,* 899 S.W.2d 722, 727 (Tex.App.—Houston [14th Dist.] 1995, writ dism'd); *cf. Gillen v. Williams Brothers Constr. Co.,* 933 S.W.2d 162, 163 (Tex.App.—Houston [14th Dist.] 1996, writ denied).

### THE QUESTION OF DUTY

In its third issue, Hygeia complains the trial court erred in submitting the cause to the jury because it owed no duty to disclose diseases common to most dairy herds.

The threshold inquiry in a negligence case is duty. *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex.1987). The question of duty turns on the foreseeability of harmful consequences, which is the underlying basis for negligence. *Corbin v. Safeway Stores, Inc.,* 648 S.W.2d 292, 296 (Tex.1983). Foreseeability means that a person of ordinary intelligence should have anticipated the dangers that his negligent act created for others. *Missouri Pac. R. Co. v. American Statesman,* 552 S.W.2d 99, 103 (Tex.1977). The existence of a duty is a question of law for the court to decide from the facts surrounding the occurrence in question. *Walker v. Harris,* 924 S.W.2d 375, 377 (Tex.1996); *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990).

In determining the question of duty, the court will consider several interrelated factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant. *Phillips,* 801 S.W.2d at 525 (quoting *Otis,* 668 S.W.2d at 309).

We believe the evidence adduced at trial supports the trial court's implicit determination that Hygeia was under a duty to reveal all diseases present in its herd at the time of Gonzalez's purchase. Gonzalez testified that he asked for healthy cows;

he also notes that he did not have a chance to inspect the 300 or so cows Hygeia sold for slaughter instead of as milk producers. The uncontroverted testimony is that buying diseased cows and mixing them with a new herd creates a risk of infection among uninfected cows. There was also testimony from Dr. Collins that a reasonably prudent dairy farmer with Johne's disease in his herd would not sell milking cows to another dairy farmer without disclosing that disease, because the disease can spread throughout a herd and because it is so difficult to eliminate from a herd. Dr. Collins also disputed Hygeia's contention that these diseases are present in nearly every dairy herd in Texas.

We also note that Hygeia's own experts testified that Johne's disease and bovine leukosis can be controlled through an aggressive herd management program. We do not know how Gonzalez could aggressively manage these new diseases if he did not know these diseases had come into his herd.

Essentially, by arguing that it had no duty to reveal the presence of these diseases, Hygeia is seeking to place the loss in this transaction on an invincibly ignorant party, which we decline to do. We therefore find that, when selling cows for milk production, Hygeia was under a duty to disclose the presence of communicable diseases of which it was actually aware which could substantially harm the productivity of a purchaser's existing herd. Hygeia's third issue is overruled.

### MITIGATION OF DAMAGES

█ In its first issue, Hygeia complains the trial court erred in not submitting an issue to the jury on mitigation of damages. Hygeia argues that when Gonzalez started to lose cattle, he failed to test the dead and dying animals to determine exactly what was causing the deaths, which a reasonably prudent dairy farmer would have done. Hygeia argues this evidence entitled them to a mitigation of damages instruction for the jury. We agree.

█ The trial court must submit questions, instructions and definitions which are raised by the pleadings and the evidence. *See* Tex.R. Civ. P. 278. A mitigation of damages instruction is proper when the negligence complained of merely contributed to or added to the extent of the losses or injuries, but has no part in causing the incident in question. *Elbaor v. Smith*, 845 S.W.2d 240, 245 (Tex.1992); *Kerby v. Abilene Christian College*, 503 S.W.2d 526, 528 (Tex.1973). In this way, the law seeks to avoid economic waste by denying the wronged party a recovery for such losses as could have reasonably been avoided. *Alexander & Alexander v. Bacchus Indus.*, 754 S.W.2d 252, 253 (Tex. App.—El Paso 1988, writ denied).

█ The burden of proving a failure to mitigate is upon the party who caused the loss and the standard is that of ordinary care, i.e., what an ordinary prudent person would have done under the same or similar circumstances. *Moulton v. Alamo Ambulance Service*, 414 S.W.2d 444, 447 (Tex.1967); *Pinson v. Red Arrow Freight Lines, Inc.*, 801 S.W.2d 14 (Tex.App.—Austin 1990, no writ); 28 Tex. Jur 3d *Damages* § 194 (1996). Mitigation of damages is ordinarily a question of fact for the jury. *Sorbus, Inc. v. UHW Corp.*, 855 S.W.2d 771, 775 (Tex.App.—El Paso 1993, writ denied); *Hardison v. Beard*, 430 S.W.2d 53, 57 (Tex.Civ.App.—Dallas 1968, writ ref'd n.r.e.).

█ If raised by the pleadings and evidence, and if the complaining party submitted an instruction in substantially correct form, failure to submit an instruction on the duty to mitigate is reversible error. Tex.R. Civ. P. 278; *Alexander & Alexander*, 754 S.W.2d at 253 (citing *Alamo Ambulance*, 414 S.W.2d at 447).

Gonzalez argues the evidence was not sufficient to merit a mitigation instruction. We believe the evidence is strong that Gonzalez's negligent treatment of his herd contributed substantially to his losses. Al-

though Gonzalez ultimately lost his herd, he never had autopsies performed on the afflicted cattle and no laboratory work was initiated before May 1994 to determine a cause of death. Dr. Wilkinson testified that while he tried various treatments on the cattle, he did not perform autopsies because Gonzalez was too frugal, and that he never pinpointed what was killing Gonzalez's cattle. Hygeia's expert, Dr. Steven Wikse, testified it was impossible to determine a cause of death for any of the cattle because of the paucity of tests. Dr. Vickers testified that a reasonably prudent dairy farmer, faced with these losses, would have done more testing, including autopsies, to minimize his losses. And Gonzalez's own expert, Dr. Collins, agreed that a reasonably prudent dairy farmer would do more than Gonzalez did to diagnose his herd's affliction.

▇ Gonzalez also contends that because Hygeia cannot prove the exact amount of damages attributable to his negligence, Hygeia is not entitled to an instruction on mitigation of damages. We believe the law does not require such a showing, especially when the damages themselves are unliquidated. The best illustration of this point is *Alamo Ambulance*. In that seminal case, the supreme court held that the tortfeasor was entitled to have the jury instructed so that it would determine which damages were caused by its negligent acts and which damages were caused by Moulton's negligence in not following his doctor's advice. *Alamo Ambulance*, 414 S.W.2d at 449. The court so held even though there was no testimony as to how much of Moulton's injury was due solely to his negligent failure to follow his doctor's advice. *Id.; see also Alamo Ambulance Service v. Moulton,* 402 S.W.2d 200, 203 (Tex.App.—San Antonio 1966, *aff'd,* 414 S.W.2d 444 (Tex.1967)). The supreme court found simply that "damages resulting from such failure [to mitigate] are ultimately not proximately caused by the wrongdoer's acts or omissions, but by the injured person's own

subsequent negligence, and are thus not recoverable from the wrongdoer." *Id.* at 449.

▇ This does not mean that a defendant can get a mitigation instruction merely by asserting that a plaintiff failed to mitigate damages. Evidence must be developed which clearly shows a plaintiff's failure to mitigate caused further damages, and the evidence must be sufficient to guide the jury in determining which damages were attributable to a plaintiff's failure to mitigate. For example, in *Alexander & Alexander,* a fire destroyed a company's computer; the verdict against its insurance company was based on the company's inability to use its essential computer billing and inventory-tracking software. *Id.,* 754 S.W.2d at 254. The evidence showed that after the fire, and after receiving insurance proceeds from another policy, the company did not buy a computer that could run the vital software; instead it leased an incompatible computer. *Id.* It did so even though the exact computer destroyed by the fire was still available on the market. *Id.* Moreover, the company did not modify the vital software to run on the new machine, although it could have done so. *Id.* The reviewing court held the trial court erred in refusing to issue the jury an instruction on the company's failure to mitigate its damages. *Id.*

▇ Indeed, a plaintiff's own evidence can be used to provide the requisite framework. *See id.; see also Lakeway Land Co. v. Kizer,* 796 S.W.2d 820 (Tex.App.— Austin 1990, writ denied) (defendant got mitigation instruction using plaintiff's evidence).

Some courts of appeals have in fact held that the tortfeasor must prove "not only the lack of diligence, but also the amount by which the damages were increased by such failure." *R.A. Corbett Transport, Inc. v. Oden,* 678 S.W.2d 172, 176 (Tex.

App.—Tyler 1984, no writ).[1] We believe this phrase simply means that there must be some evidence in the record from which the jury can make a reasoned calculation about losses from failure to mitigate. In fact, this language is usually deployed to discard specious or near-specious assertions of a duty to mitigate. In *City of San Antonio v. Guidry*, for example, a restaurant owner sued the city over construction work which blocked access to his restaurant, for a period of months, resulting in its closure. *Guidry*, 801 S.W.2d 142, 144 (Tex.App.—San Antonio 1990, no writ). The city suggested Guidry could have mitigated his damages by moving his restaurant, yet introduced no evidence on moving costs or likelihood of success at another location. *Id.* at 151. The court held the instruction was properly refused because "the city did not present legally sufficient proof to require its submission." *Id. See also Cocke v. White*, 697 S.W.2d 739, 744 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.) (when defendant introduced no evidence to guide the jury in mitigation calculations, instruction properly refused).

By contrast, here the jury had all of Gonzalez's evidence about the cost of replacement cattle and the value of its herd, plus the testimony of four expert witnesses, from which the jury could have derived a reasoned calculation about the failure to mitigate. We therefore find that the instruction was sufficiently raised by the pleadings and the evidence that an instruction to the jury should have been issued.

■ Gonzalez also argues the trial court properly refused to submit the mitigation of damages question because the court already submitted a question on contributory negligence. The concepts are distinct. Contributory negligence goes to the proximate cause of the original inci-

dent. Here, for example, the jury could have concluded that Gonzalez's negligence in taking Hygeia's word that the cattle were healthy and in taking them without complete medical records was contributory negligence. Mitigation of damages, on the other hand, arises from Gonzalez's separate duty to act reasonably in reducing his damages. *Elbaor*, 845 S.W.2d at 243. Gonzalez conceded at oral argument that the injury was complete with consummation of the sale of Hygeia's cattle; therefore his subsequent injury could not have resulted from contributory negligence.

We find that Hygeia properly raised the issue of mitigation of damages in its pleadings, that the evidence also raised the issue, and that Hygeia tendered a substantially complete instruction which was refused by the trial court. The trial court's refusal to submit an instruction on the duty to mitigate was therefore error. Hygeia's second point of error is sustained.

Because of our disposition of the case we need not reach Hygeia's final point of error on sufficiency of the evidence to support a gross negligence finding.

The judgment of the trial court is reversed and the cause remanded for proceedings consistent with this opinion.

Dissenting opinion by: PHIL HARDBERGER, Chief Justice, joined by Justice LÓPEZ and Justice STONE.

HARDBERGER, Chief Justice, dissenting.

The majority concludes that the trial court erred in failing to instruct the jury on mitigation. To be entitled to such an instruction, however, Hygeia was required to prove the amount by which Gonzalez's damages were increased by his alleged failure to mitigate.[1] *See, e.g., Austin Hill*

---

1. We note that in this case, the instruction was actually given; the question on appeal was whether the jury's answer to that question was supported by sufficient evidence.

1. This proof requirement is similar to the proof a defendant insurer must offer in workers' compensation cases to be entitled to a reduction in recovery based on a previous injury. *See Klein Independent School Dist. v.*

*Country Realty, Inc. v. Palisades Plaza, Inc.*, 948 S.W.2d 293, 299 (Tex.1997); *Harris County v. Smoker*, 934 S.W.2d 714, 721 (Tex.App.—Houston [1st Dist.] 1996, writ denied); *Regency Advantage Ltd. Partnership v. Bingo Idea–Watauga, Inc.*, 928 S.W.2d 56, 62 (Tex.App.—Fort Worth 1995), *aff'd in part and rev'd in part on other grounds*, 936 S.W.2d 275 (Tex.1996); *Rauscher Pierce Refsnes, Inc. v. Great Southwest Savings, F.A.*, 923 S.W.2d 112, 117 (Tex.App.—Houston [14th Dist.] 1996, no writ); *Lester v. Logan*, 893 S.W.2d 570, 577 (Tex.App.—Corpus Christi 1994), *writ denied per curiam*, 907 S.W.2d 452 (Tex. 1995); *Texas Dept. of Human Services v. Green*, 855 S.W.2d 136, 151 (Tex.App.—Austin 1993, writ denied); *City of San Antonio v. Guidry*, 801 S.W.2d 142, 150 (Tex.App.—San Antonio 1990, no writ); *Lakeway Land Co. v. Kizer*, 796 S.W.2d 820, 824 (Tex.App.—Austin 1990, writ denied); *Cocke v. White*, 697 S.W.2d 739, 744 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.); *R.A. Corbett Transport, Inc. v. Oden*, 678 S.W.2d 172, 176–77 (Tex.App.—Tyler 1984, no writ); *United Furniture & Appliance Co. v. Johnson*, 456 S.W.2d 455, 459 (Tex.Civ.App.—Tyler 1970, no writ); *Tom Brown Drilling Co. v. Nieman*, 418 S.W.2d 337, 340–41 (Tex.Civ.App.—Eastland 1967, writ ref'd n.r.e.). Because I believe Hygeia failed to meet this burden, I respectfully dissent.

Two diseases were present in Hygeia's herd—bovine leukosis and Johne's disease. Hygeia introduced evidence that the diseases could have been managed through a herd management program, which would require the culling of cattle that displayed symptoms of the disease for testing and the performance of autopsies. The very nature of the management program recognizes that some cattle will be lost during its course.

Hygeia contends that Gonzalez could have mitigated his damages by the entire value placed on his herd. However, the evidence showed that Johne's disease is terminal and only some cattle are able to recover from bovine leukosis. Furthermore, the value of a cow that does recover from bovine leukosis is lost or decreased during the recovery period after clinical symptoms of the disease develop.

The majority asserts that the burden of showing the amount by which damages can be mitigated is lessened in cases in which damages are unliquidated. The majority relies on *Alamo Ambulance* to support this assertion, contending a mitigation instruction was required in that case even though "there was no testimony as to how much of Moulton's injury was due solely to his failure to follow his doctor's advice." However, the Texas Supreme Court's opinion actually notes: "The doctor's testimony would also support a reasonable conclusion that Moulton's knee injury would probably have healed within a brief period of time if he had followed his doctor's advice." *Moulton v. Alamo Ambulance Service, Inc.*, 414 S.W.2d 444 (Tex.1967). The doctor's testimony, therefore, was evidence of an amount by which the damages could be mitigated in that case, i.e, the damages could have been totally mitigated after a brief period of time, which period of time is presumably described by the doctor in his testimony.

As previously explained, the evidence presented in this case could not support a total mitigation finding. Since some cattle are necessarily lost even during a successful herd management program and the value of the diseased cattle that survive is lost or decreased during the recovery period, a jury could not determine the amount by which damages could be mitigated absent evidence of the percentage of the herd that would be unavoidably lost under

*Wilson*, 834 S.W.2d 3, 4 (Tex.1992); *Transport Ins. Co. v. Mabra*, 487 S.W.2d 704, 707 (Tex.1972). In those cases, the defendant insurer must present evidence of an amount or percentage by which a prior injury contrib-

utes to a subsequent injury. *See Klein Independent School Dist. v. Wilson*, 834 S.W.2d at 4; *Transport Ins. Co. v. Mabra*, 487 S.W.2d at 707.

a successful herd management program and the percentage of those that would survive with reduced values.

For this same reason, the decision in *Alexander & Alexander of Texas, Inc. v. Bacchus Indus., Inc.*, 754 S.W.2d 252 (Tex.App.—El Paso 1988, writ denied), cited by the majority, is distinguishable. The evidence in that case disclosed that the plaintiff could have mitigated its entire damages by purchasing a compatible replacement computer. *Id.* Unlike the *Alexander* case, Gonzalez could not have mitigated his entire damages because he could not identify the diseased cattle until clinical symptoms were displayed, and once clinical symptoms were displayed, the value of the cow displaying those symptoms was already lost or decreased.

Not only does *Alamo Ambulance* not support the majority's attempted unliquidated damages distinction, but other cases involving unliquidated damages also undermine the majority's reasoning.

In *Harris County v. Smoker*, the jury assessed damages for the defendant's negligence which caused the plaintiff to suffer a fractured ankle, resulting in 20% impairment. 934 S.W.2d at 722. Although the plaintiff failed to attend the physical therapy prescribed by her physician to increase the strength and range of motion of her ankle, no testimony was introduced to specify any amount of increase in ankle strength or range of motion that would have been gained from the therapy, or any amount lost from not following such therapy. *Id.* Similarly, in the instant case, Hygeia introduced evidence that Gonzalez's damages could have been decreased by a proper herd management program; however, there was no evidence of the amount of the herd that could have been saved in light of the evidence that some cattle

would necessarily be lost. *Harris County v. Smoker* involved a claim for unliquidated damages, yet, a mitigation instruction was not required because proof of the *amount* by which the damages could be mitigated was absent.

Similarly, in *City of San Antonio v. Guidry*, the plaintiff sued the City for inverse condemnation, and the jury found that the City unduly delayed a drainage and street project which caused a temporary limited restriction of access to the plaintiff's restaurant. 801 S.W.2d at 144. The plaintiff sought and recovered damages for lost profits. *Id.* at 150. The City suggested that the plaintiff could have mitigated his damages by closing the existing restaurant location and moving elsewhere. The court of appeals held that the trial court properly refused a mitigation instruction because there was no evidence to show "how long it would have taken [the plaintiff] to relocate, what the move would have cost, or how successful he might have been at another location." In the instant case, Hygeia failed to present evidence to show how long the herd management program would take to prevent the loss of additional cattle to the disease after some cattle began displaying symptoms or how successful the program would have been by showing the percentage or value of the cattle that would necessarily have been lost. *City of San Antonio v. Guidry* involved a jury award for unliquidated damages, but this court still held that the denial of a mitigation instruction was proper because the defendant failed to introduce evidence of a specific amount of damages that could have been avoided.[2]

Hygeia was required to prove the amount by which Gonzalez's damages were increased by his alleged failure to mitigate

---

**2.** I also believe the questions posed in Gonzales's motion for rehearing *en banc* are well taken. "If the evidentiary predicate needed to submit a mitigation instruction will depend on the liquidated/unliquidated distinction, what happens in a multi-element case where some elements are liquidated and some are not? ... Does the defendant, who fails to prove a specific amount, receive a mitigation instruction as to some elements but not others? If there's a broad-form multi-element damage question, will the jury be directed to apply the mitigation instruction to only the 'liquidated' elements?"

through the use of a herd management program. Hygeia failed to introduce evidence of the amount of damages Gonzalez could have mitigated through the use of such a program because there was no evidence of the value of the cattle that necessarily would be lost or whose value would be decreased as a result of the presence of the two diseases. Absent evidence of the unavoidable loss caused by the diseases even in the presence of a successful herd management program, a jury could not arrive at a "reasoned" calculation of the amount by which the damages could be mitigated. Therefore, Hygeia was not entitled to a mitigation instruction. Because the majority holds otherwise, I dissent.