

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-20-00189-CV

———————————————

THE CUSTOMER CENTER OF DFW INC. D/B/A SPRINT STORE BY THE
CUSTOMER CENTER AND THE CUSTOMER CENTER INC., Appellants

V.

RPAI NORTH RICHLAND HILLS DAVIS LIMITED PARTNERSHIP, Appellee

On Appeal from the 342nd District Court
Tarrant County, Texas
Trial Court No. 342-312627-19

Before Birdwell, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Birdwell

# MEMORANDUM OPINION

A landlord sued its tenant for breach of a commercial lease, and the tenant raised affirmative defenses. The trial court granted summary judgment in favor of the landlord. We conclude that the tenant's evidence created a fact issue on its defense of failure to mitigate, which is enough to defeat summary judgment. We therefore reverse and remand.

## I.   BACKGROUND

In 2015, appellant The Customer Center of DFW Inc. ("Tenant") signed a five-year lease for a commercial space at a shopping center owned by appellee RPAI North Richland Hills Davis Limited Partnership. The other appellant, The Customer Center Inc., signed a guaranty of the lease.

In early 2017, Tenant notified RPAI that it was losing money and asked RPAI about finding a new tenant. In March 2017, RPAI and Tenant executed a re-leasing agreement in which RPAI promised to try to find a new tenant, and Tenant promised to keep making payments in the meantime. But Tenant offered testimony that, over the years that followed, RPAI's efforts to find a new tenant were negligible and that RPAI even took steps to undercut Tenant's attempt to facilitate the process. In June 2017, Tenant informed RPAI that it would be closing its doors.

In January 2018, RPAI informed Tenant that it had found a replacement tenant, but RPAI requested a $110,000 fee in exchange for terminating the lease,

which Tenant refused. In April 2018, Tenant offered two potential tenants who were willing to take over the lease, but RPAI rejected them without explanation.

In an attempt to salvage the venture, Tenant reopened its store on September 11, 2018, but it lost money and closed again in March 2019.

RPAI sued Appellants for breach of the lease and the guaranty in October 2019, alleging that they had failed to pay rent since December 2018. RPAI moved for traditional summary judgment on its claims, relying on a declaration by RPAI's property manager that Tenant had stopped paying rent.

Appellants then amended their answer to raise defenses concerning RPAI's allegedly poor effort to relet the premises: that RPAI failed to mitigate its damages and that it materially breached the lease by failing to relet the premises, thus relieving Appellants of any obligation to pay rent under the lease. Appellants sought to avoid summary judgment by raising a fact issue on those defenses, relying on an affidavit by Appellants' CEO and president Luigi V. Ambrosio. Ambrosio swore to most of the facts we have recited above.

The trial court granted final summary judgment to RPAI awarding damages of $74,096.13, attorney's fees of $3,500, and costs. Appellants appealed.

## II. SUMMARY JUDGMENT BURDEN

In their first issue on appeal, Appellants assert that the trial court applied the wrong standard at summary judgment. Appellants submit that "[w]hen a plaintiff moves for traditional summary judgment on a defendant's affirmative defenses, the

burden is on the plaintiff to come forth with sufficient evidence to conclusively negate an element of the defendant's affirmative defenses." According to Appellants, it was RPAI's burden to conclusively negate at least one element of Appellants' defenses of failure to mitigate and prior material breach.

We take no issue with Appellants' general statement of the law concerning situations where a plaintiff moves for traditional summary judgment on a defendant's affirmative defenses. "In the context of a plaintiff's traditional motion for partial summary judgment to dispose of a defendant's affirmative defense, a plaintiff may prevail by conclusively negating at least one element of the defense." *Berry Contracting, L.P. v. Mann*, 549 S.W.3d 314, 322 (Tex. App.—Corpus Christi–Edinburg 2018, pet. denied).

However, that law does not apply here. RPAI was not using the summary judgment process to attack Appellants' affirmative defenses. Rather, RPAI was moving for summary judgment on its own claims in an attempt to dispose of the case fully and finally. That being the situation, it was RPAI's initial burden to conclusively prove all essential elements of its own contract claim, not to conclusively negate Appellants' defenses. *See MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986); *Charles Glen Hyde, Nw. Reg'l Airport, Inc. v. Nw. Reg'l Airport Prop. Owners Ass'n, Inc.*, 583 S.W.3d 644, 648 (Tex. App.—Fort Worth 2018, pet. denied). A plaintiff satisfies its initial summary judgment burden if it conclusively proves all essential elements of its cause of action. *Charles Glen Hyde*, 583 S.W.3d at 648. Further, we consider the evidence

4

presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). Appellants do not dispute that RPAI carried its initial burden.

If the movant carries its initial burden, "the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment." *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). Where the nonmovant relies on an affirmative defense such as mitigation to defeat summary judgment, the nonmovant has the burden in its summary judgment response to present evidence sufficient to raise a fact issue on each element of the affirmative defense. *See Am. Petrofina, Inc. v. Allen*, 887 S.W.2d 829, 830 (Tex. 1994); *H & H Steel Fabricators, Inc. v. Wells Fargo Equip. Fin., Inc.*, No. 02-15-00391-CV, 2016 WL 6277371, at *5 (Tex. App.—Fort Worth Oct. 27, 2016, no pet.) (mem. op.).

The onus with respect to Appellants' defenses therefore fell on Tenant, not RPAI. Appellants' issue arguing to the contrary is overruled.

## III. TENANT'S DEFENSES

We next take up Appellants' third issue, in which they argue that there was a fact issue on their affirmative defense of failure to mitigate. Appellants argue that their undisputed evidence concerning RPAI's poor attempt to relet the premises should have precluded summary judgment.

5

A landlord has a duty to make reasonable efforts to mitigate damages when the tenant breaches the lease and abandons the property. Tex. Prop. Code Ann. § 91.006(a); *Austin Hill Country Realty, Inc. v. Palisades Plaza, Inc.*, 948 S.W.2d 293, 299 (Tex. 1997) (op. on reh'g); *Hoppenstein Props., Inc. v. Schober*, 329 S.W.3d 846, 849 (Tex. App.—Fort Worth 2010, no pet.). "A landlord should not be allowed to collect rent from an abandoning tenant when the landlord can, by reasonable efforts, relet the premises and avoid incurring some damages." *Austin Hill Country*, 948 S.W.2d at 299. "The landlord's failure to use reasonable efforts to mitigate damages bars the landlord's recovery against the breaching tenant only to the extent that damages reasonably could have been avoided." *Hoppenstein*, 329 S.W.3d at 849. However, the landlord is not required to simply fill the premises with any willing tenant; the replacement tenant must be suitable under the circumstances. *Id.*

"A tenant's assertion that a landlord failed to mitigate damages is an affirmative defense." *Id.* Thus, the tenant bears the burden to demonstrate that the landlord has failed to mitigate damages and the amount by which the landlord could have reduced its damages. *Austin Hill Country*, 948 S.W.2d at 299. The duty to mitigate is designed "to discourage the waste that results when a party sits still and lets damages pile up when reasonable steps would prevent further loss," *Mellema v. Cargill, Inc.*, No. 05-92-00375-CV, 1993 WL 58518, at *6 (Tex. App.—Dallas Feb. 26, 1993, no writ) (not designated for publication), rather than to "penalize the mitigating party for not doing enough." *Hoppenstein*, 329 S.W.3d at 850.

6

Appellants offered some evidence of RPAI's failure to make reasonable efforts to mitigate damages, as well as the amount of damages that could potentially have been avoided through mitigation. Viewed in the light most favorable to Appellants, the record establishes the following:

- In the 2015 lease, RPAI pledged to make "good faith," "commercially reasonable efforts" to find a replacement tenant in the event of a default by Tenant;

- In March 2017, RPAI renewed that promise in the "Re-Leasing Agreement" after Tenant notified RPAI that it was closing its store with 42 months left on the lease;

- RPAI failed to locate a new tenant over the next three-and-a-half years;

- That failure was attributable to RPAI's refusal to take minimum efforts to find a replacement tenant, such as by declining to show on its website that the premises were available, despite multiple requests from Tenant;

- RPAI also barred Tenant from displaying a "for rent" sign to assist in the reletting process;

- In January 2018, RPAI notified Tenant that it had located a replacement tenant, but in exchange for terminating the lease, it demanded a $110,000 fee from Tenant that was not contemplated by the parties' agreements;

- Based on the timetable of events and the terms of the lease, it is evident that if RPAI had reasonably accepted the new tenant in January 2018 instead of trying to extract an additional payment from Tenant, RPAI could have potentially mitigated roughly $90,000 in damages, which represents the remaining twenty-one monthly payments on the lease after Tenant stopped paying rent in December 2018;

- In April 2018, Tenant brought to RPAI's attention two more suitable replacement tenants who were willing to take over the existing lease, but RPAI rejected both without explanation; and

- Had RPAI reasonably accepted either one of the proposed tenants in April 2018, it would have mitigated roughly $90,000 in damages.[1]

---

[1]Luigi Ambrosio's affidavit was the source of most of this evidence, but RPAI maintains that his affidavit is conclusory and therefore no good as summary judgment evidence. *See Atmos Energy Corp. v. Paul*, 598 S.W.3d 431, 467 (Tex. App.—Fort Worth 2020, no pet.). We disagree. "A conclusory statement is one that does not provide the underlying facts to support the conclusion." *Gaber v. U.S. Bank Nat'l Ass'n as Tr. for Truman 2016 Title Tr.*, No. 02-19-00243-CV, 2020 WL 5242419, at *4 (Tex. App.—Fort Worth Sept. 3, 2020, pet. denied) (mem. op.) (quoting *Residential Dynamics, LLC v. Loveless*, 186 S.W.3d 192, 198 (Tex. App.—Fort Worth 2006, no pet.)). Ambrosio's affidavit is composed of hard factual matter, not vague declarations parroting the elements. He provided specific facts to substantiate the elements, with a detailed timeline of the ways in which RPAI refused to reasonably pursue mitigation.

RPAI also attacks the affidavit in another way: it contends that Ambrosio failed to demonstrate the basis of his personal knowledge. *See Kerlin v. Arias*, 274 S.W.3d 666, 668 (Tex. 2008) (per curiam). Again, we differ in our estimation of the affidavit. "[A] person's position or job responsibilities can peculiarly qualify [him] to

We believe that despite Appellants' inability to pinpoint the exact amount of damages that could have been avoided, the above evidence nonetheless gives rise to a fact issue on failure to mitigate, as is shown by *Hygeia Dairy Co. v. Gonzalez*, 994 S.W.2d 220 (Tex. App.—San Antonio 1999, no pet.) (en banc op. on reh'g). There, a dairy sold fifty-one head of cattle to a rancher, but unbeknownst to the rancher, the cattle were diseased. *Id.* at 222. The rancher's stock began to die off in 1993, forcing him to liquidate his entire herd in late 1994, and he sued the dairy. *Id.* The dairy pleaded the defense of failure to mitigate; it argued and proffered evidence that when the rancher started to lose cattle, he should have tested the dead and dying animals to determine exactly what was causing the deaths. *Id.* at 224. Nonetheless, the trial court refused to submit the mitigation issue to the jury. *Id.* On appeal, the court agreed the trial court should have submitted the mitigation issue to the jury, even though the dairy's trial evidence did not "prove the exact amount of damages attributable to" the rancher's neglect. *Id.* at 225. "We believe the law does not require such a showing, especially when the damages themselves are unliquidated." *Id.* Rather, the court

have personal knowledge of facts and establish how [he] learned of the facts." *Goins v. Discover Bank*, No. 02-20-00128-CV, 2021 WL 1136077, at *2 (Tex. App.—Fort Worth Mar. 25, 2021, no pet. h.) (mem. op. on reh'g) (citing *Boswell v. Farm & Home Sav. Ass'n*, 894 S.W.2d 761, 768 (Tex. App.—Fort Worth 1994, writ denied)). Ambrosio explained that he was president and CEO of Tenant, and much of his affidavit's factual content was framed in the first person; it was largely a sworn account of things that he said and did with respect to RPAI, as well as things that RPAI's managers said and did in return. Ambrosio's position and his role in overseeing these events on Appellants' behalf establish the basis of his personal knowledge.

concluded, "Mitigation of damages is ordinarily a question of fact for the jury,"[2] and to create a fact issue for the jury, the defendant need only produce some evidence "from which the jury can make a reasoned calculation about losses from failure to mitigate." *Id.* at 224, 226. The court held that this standard was satisfied by the general evidence concerning the cost of the replacement cattle and the value of the rancher's herd. *Id.* at 226.

Likewise, in this case, Appellants made an imprecise record concerning the exact amount that RPAI could have mitigated through reasonable efforts. Still, as with *Hygeia*, we hold that the evidence is sufficient to give rise to a fact issue on the defense of failure to mitigate. There was evidence of RPAI's delinquent efforts to relet the premises. There was also proof concerning the value and term of the lease, along with the evidence that if RPAI had acted reasonably with respect to any of the potential tenants in early 2018, this could have saved nearly two years' worth of payments on the lease, to the tune of over $90,000. This is enough to survive summary judgment. *See id.*

Because Appellants have offered evidence sufficient to raise a fact issue on each element of its failure-to-mitigate defense, summary judgment was improper. *See Am. Petrofina*, 887 S.W.2d at 830. We sustain Appellants' third issue, which renders it unnecessary to consider Appellants' second issue.

---

[2]*See also White v. Harrison*, 390 S.W.3d 666, 675 (Tex. App.—Dallas 2012, no pet.) ("The reasonableness of the landlord's efforts to avoid damages is an issue for the fact finder.").

## IV.   CONCLUSION

We reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered:  May 27, 2021

11