**Reverse and Remand in part; Affirm in part and Opinion Filed December 29, 2022**



In The
# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-20-01048-CV

**GAEDEKE HOLDINGS II, LTD., Appellant**
**V.**
**CHAIT AND HENDERSON, P.C. D/B/A UPTOWN VISION, Appellee**

**On Appeal from the 44th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-03350**

## MEMORANDUM OPINION
Before Justices Schenck, Molberg, and Pedersen, III
Opinion by Justice Molberg

In this commercial lease dispute, appellant Gaedeke Holdings II, Ltd. ("Gaedeke") and appellee Chait and Henderson, P.C. d/b/a/ Uptown Vision ("Uptown") appeal a final judgment in favor of Uptown on its breach of contract and declaratory judgment claims against Gaedeke. Gaedeke argues the trial court erred as a matter of law in interpreting the parties' lease or, alternatively, in concluding Gaedeke failed to prove mutual mistake. In a cross-issue, Uptown argues the trial court erred in its award of attorney's fees. In this memorandum opinion, *see* TEX. R. APP. P. 47.4, because we resolve Gaedeke's first issue in its favor, we reverse the

judgment in favor of Uptown and order it take nothing on its claims for breach of contract, declaratory relief, and attorney's fees against Gaedeke; remand to the trial court for re-entry of judgment consistent with our opinion as it relates to Gaedeke's breach of contract and declaratory judgment claims and for a determination of any attorney's fees to which Gaedeke may be entitled; and otherwise affirm the trial court's judgment.

## I. BACKGROUND

On June 16, 2016, the parties entered into a Lease entitled "Triple Net Lease Agreement" (the "Lease").[1] Gaedeke is the landlord; Uptown, the tenant.

After a dispute arose regarding the calculation of rent—a term the Lease specifically defines[2]—Uptown sued Gaedeke and two others who are not parties to this appeal.[3] Against Gaedeke, Uptown asserted breach of contract, declaratory judgment, and various tort claims, the latter of which are not at issue in this appeal. Gaedeke generally denied Uptown's claims, raised various affirmative defenses, and

---

[1] *See Hoppenstein Props., Inc. v. Schober*, 329 S.W.3d 846, 850 n.2 (Tex. App.—Fort Worth 2010, no pet.) ("A triple net lease is one in which the tenant's rent includes a percentage of the landlord's real property taxes, insurance, and common area maintenance charges for the property in addition to the basic rent."); *see also Lease (net-net-net lease)*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "net-net-net lease," also known as a "triple net lease," as "[a] lease in which the lessee pays all the expenses, including mortgage interest and amortization, leaving the lessor with an amount free of all claims.").

[2] The Lease states, "'Rent' means "Base Rent," plus "Parking Fees," and its "Pro Rata Share" [i.e. 1.88 percent of] its "Electricity Costs" and all "Basic Costs," and "all other sums of money owed to [Gaedeke] under the lease. Each of those capitalized, quoted phrases is specifically defined in the parties' lease, including "Basic Costs," a phrase defined in a roughly two-page span in the Lease, some of which we include below.

[3] The trial court entered a take nothing judgment on Uptown's claims against William Sale and Transwestern Commercial Services, LLC. Uptown has raised no issue regarding that portion of the judgment on appeal.

–2–

asserted various counterclaims against Uptown, including a counterclaim for breach of contract. Gaedeke also sought declaratory relief.

As to their competing breach of contract claims, in their pleadings, Uptown claimed Gaedeke breached the Lease by "choosing to enforce lease terms to which neither party has ever agreed, but to which Gaedeke wishes the party had agreed" and interfered with Uptown's performance under the Lease by asking Uptown to pay more than is due and by "refusing to accept as full monthly payments the payments made in compliance with the Lease." In addition to other alleged breaches of the Lease not at issue in this appeal,[4] Gaedeke claimed Uptown breached the Lease by failing to pay the full amount of rent due under the Lease.

The case was tried in a four-day bench trial beginning February 17, 2020. On May 26, 2020, the trial court signed an interlocutory judgment entitled "Final Judgment Except for Determination of Attorneys' Fees" in favor of Uptown on its declaratory judgment and breach of contract claims. Both parties submitted post-trial briefing on attorney's fees, and the court conducted a post-trial hearing on that issue on June 17, 2020.

On November 17, 2020, the trial court signed a twelve-page final judgment for Uptown against Gaedeke on Uptown's declaratory judgment and breach of

---

[4] Gaedeke's pleading also claimed Uptown breached the Lease in other respects by allegedly violating a non-disclosure provision and by filing this action without providing notice to Gaedeke's mortgagees as required under the Lease. None of these other breach of contract claims are pertinent to this appeal, and we do not address them.

contract claims. Among other things, the trial court included in the final judgment five declarations in connection with Uptown's declaratory judgment claim,[5] entered a take nothing judgment on Uptown's other claims, entered a take nothing judgment on Gaedeke's counterclaims against Uptown, denied all relief requested but not granted therein, and awarded Uptown certain amounts, including release of certain funds in the court's registry, as well as $73,345.60 in attorney's fees plus other amounts in the event Uptown successfully defends the matter on appeal.

Two days later, the trial court signed findings of fact and conclusions of law, which included the following paragraph:

> Under the plain meaning of the terms of the Lease, for purposes of computing [Uptown's] pro rata share of those Basic Costs excluded from the 6% cap in Paragraph 1(b) of the Lease, [Uptown] was only

---

[5] This portion of the judgment stated:

IT IS THEREFORE ORDERED, ADJUDGED, and DECREED that pursuant to the Uniform Declaratory Judgments Act, codified as Ch. 37 of the Texas Civil Practice & Remedies Code, the Court hereby makes the following declarations:

    i. Uptown Vision is not in default of the Lease Agreement dated June 16, 2016 between [Gaedeke] as Landlord and [Uptown] as Tenant . . .;

    ii. Gaedeke has no present right to terminate the Lease;

    iii. Gaedeke has no present right to change the locks to the Premises, or otherwise lock [Uptown] out from the Premises;

    iv. For purposes of computing [Uptown's] pro rata share of those Basic Costs excluded from the 6% cap in Paragraph 1(b) of the Lease, [Uptown] was only obligated to pay Gaedeke for any increase in those Basic Costs since the first year of the lease term;

    v. For purposes of computing [Uptown's] pro rata share of controllable Basic Costs, controllable Basic Costs of the first calendar year of the Lease term was capped to 110% of Gaedeke's estimate of [Uptown's] first year Basic Costs, which was $1,018.00;

–4–

obligated to pay Gaedeke for any increase in those Basic Costs since the first year of the lease term; and for purposes of computing [Uptown's] pro rata share of controllable Basic Costs, controllable Basic Costs of the first calendar year of the Lease term was capped to 110% of Gaedeke's estimate of [Uptown's] first year Basic Costs, which was $1,018.00.

The trial court included portions of this paragraph in its final judgment[6] and included the paragraph or portions of it in several places in its findings of fact and conclusions of law, including but not limited to conclusion of law eighty-two.[7] Aside from its introductory phrase, all of the substantive language in the trial court's findings and conclusions is virtually identical to the declaration Uptown sought in its pleading.

## II. ISSUES & DISCUSSION

Gaedeke appealed the final judgment, and Uptown cross-appealed. In its two issues, Gaedeke argues the trial court erred as a matter of law in (1) interpreting the Lease or, alternatively, (2) concluding Gaedeke failed to prove mutual mistake. In its cross-issue, Uptown argues the trial court erred in the amount of attorney's fees it was awarded.

We begin with Gaedeke's first issue. In it, Gaedeke argues the trial court erred as a matter of law in interpreting the Lease, specifically as to the calculation of

---

[6] Portions of this language are included in the final judgment's fourth and fifth declarations.

[7] This language is included in whole or in part in paragraphs 43, 47.g, 47.h, 49, 82, 86.d, and 86.e of the trial court's findings of fact and conclusions of law.

annual increases in Uptown's "Pro Rata Share" of "Basic Costs," terms used in the definition of rent and defined in the Lease.[8]  Gaedeke frames its position as follows:

> This case arises from the Parties' disagreement over how annual increases in [Uptown's] Pro Rata Share of Basic Costs should be calculated.  At core, [Uptown] contends that increases should be calculated based on the fixed amount that [Uptown] paid in 2016, while [Gaedeke] contends that increases should be calculated based on the Landlord's Basic Costs in 2016.  This disagreement accounts for the difference in how the Parties calculate Rent and is at the root of the Parties' mirror image breach of contract claims.  The Trial Court erred by adopt[ing] [Uptown's] version of the Lease and rejecting [Gaedeke's]. This Court should therefore reverse the Trial Court's judgment on the Parties' breach of contract claims and remand with instructions for the Trial Court to hold a new evidentiary hearing on [Gaedeke's] attorneys' fees.

Uptown, in contrast, argues the trial court "did not err in agreeing with Uptown's construction of the lease agreement, as provided in [the trial court's] conclusion of law [eighty-two]," which refers to the same conclusion by the trial court we quoted in Section I above.

The meaning of an unambiguous contract is a question of law we review de novo.  *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 763 (Tex. 2018).[9]  A contract is not ambiguous merely because the parties disagree on its meaning.  *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006).  "An ambiguity

---

[8] The Lease states, "[Uptown's] Pro Rata Share means 1.88%, which is the Rentable Area of the Premises divided by the Rentable Area of the Building expressed as a percentage."  "Basic Costs" are defined in a roughly two-page portion of the Lease.  We include pertinent portions of that definition below.

[9] Whether a contract is ambiguous is a question of law for the court.  *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996).  Here, the trial court concluded, "The disputed Lease terms were not ambiguous."  Neither party argues otherwise on appeal.

exists only if the contract language is susceptible to two or more reasonable interpretations." *Id.* (citation omitted).

Our primary concern when interpreting a contract is to ascertain and give effect to the parties' intent as that intent is expressed in the contract. *Id.* To discern this intent, we "examine and consider *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless. No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *Id.* (quoting *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) (emphasis in original)).

Here, the Lease states, in part:[10]

### TRIPLE NET LEASE AGREEMENT

[Gaedeke] (Landlord) and [Uptown] (Tenant), for good and valuable consideration, enter into this TRIPLE NET OFFICE LEASE AGREEMENT (Lease) effective on June 16, 2016, the Effective Date . . . .

1. DEFINITIONS. These capitalized terms are some of the defined terms used in this Lease:

    (a)    Base Rent means the fixed amounts stated in the following schedule: [chart[11]]

    (b)    Basic Costs are all direct costs and expenditures of every kind incurred in connection with operating, maintaining,

---

[10] Unless otherwise noted, when quoting the Lease, we have retained capitalization and underlining but have removed all boldface text in an effort to improve readability.

[11] The chart consists of a five-column, thirteen-row table with entries representing various dates, annual rates, a rentable area of 3,257 (presumably square feet), monthly fixed amounts, and annual fixed amounts, with each "rate" or "amount" column reflecting specific dollar figures followed by "NNN," an abbreviation also found in the Lease's definition of rent, as reflected above.

–7–

protecting, repairing, replacing, managing, and owning the Project, including, without limitation . . . .

But Basic Costs will not include . . . .

For purposes of computing [Uptown's] Pro Rata Share of Basic Costs, Basic Costs (excluding those costs attributable to real and personal property taxes and assessments, insurance costs, utility services, and security costs) in any calendar year will not increase by more than 6% compounded annually over controllable Basic Costs of the first calendar year of the Term, but any increases in Basic Costs that [Gaedeke] does not recover due to this limitation will carry forward to all succeeding calendar years during the Lease Term (subject to the 6% annum limitation) until fully recouped by [Gaedeke]. [Uptown] will be required to pay 100% of any increase in [its] Pro Rata Share of Basic Costs attributable to those Basic Costs excluded from the 6% limitation.

. . . . [Gaedeke] estimates that [Uptown's] Pro Rata Share of Basic Costs shall equal $1,018.00 per month for the first calendar year of the Lease and agrees that [Uptown] shall not be obligated to pay more than 110% of such monthly amount for each month from the Commencement Date through the last month of the first calendar year of the Lease.

. . . .

(r)     Project means the Land, the Building, any parking garage serving the Building, and all other improvements and facilities now or later located in the Building or on the Land.

(s)     Rent means Base Rent, plus Parking Fees and [Uptown's] Pro Rata Share of: (i) Electricity Costs, and (ii) all Basic Costs [as defined herein, wherein [Uptown] is also responsible for its Pro Rata Share of expenses including real estate taxes, building insurance, and repairs & maintenance (NNN)], and all other sums of money owed to [Gaedeke] under this Lease.

. . . .

(y)　Tenant's Pro Rata Share means 1.88%, which is the Rentable Area of the Premises divided by the Rentable Area of the Building expressed as a percentage.

. . . .

3. RENT. Except for any notice or demand expressly required in this Lease. [Uptown] must pay to [Gaedeke] without any notice, demand, setoff, or deduction, Base Rent and all other components of Rent.

(a)　Unless otherwise expressly provided in this Lease, Base Rent (including 1/12 of its estimated or adjusted components for that calendar year and any monthly Parking Fees) will be due and payable, in advance monthly installments on or before the 1st day of each calendar month. All components of Rent owed to [Gaedeke] will be prorated daily based on a 360-day year for any partial calendar month for which any Rent is due.

(b)　During each calendar year of the Term, [Gaedeke] will be entitled to estimate [Uptown]'s Pro Rata Share of Basic Costs and of Electricity Costs for that calendar year, and by April 30th of the next calendar year, or as soon thereafter as practicable, [Gaedeke] will furnish [Uptown] a statement of actual Basic Costs and Electricity Costs for the prior calendar year. If no uncured Default then exists (and no condition exists which, with the passage of time or giving of notice, would become a Default), [Gaedeke] will refund any overpayment to [Uptown] for the prior calendar year (or, at [Gaedeke]'s option, apply such amount against Rent due or to become due). [Uptown] will pay [Gaedeke] 30 days after demand as Rent, any underpayment for the prior calendar year. [Gaedeke] will be entitled to revise its estimates one time in any calendar year.

(c)　If [Uptown] fails to pay (i) any monthly installment of Base Rent or other Rent, including without limitation, [Uptown]'s Pro Rata Share of Basic Costs and Electrical Costs based on [Gaedeke]'s annual estimate by the 5th day of the month when due; or (ii) any other component of Rent within 5 days after demand or the due date specified in this Lease, [Uptown] must pay a 10% late fee on the delinquent amount.

–9–

In the trial court's judgment, and in its conclusion of law eighty-two and elsewhere, the trial court concluded:

> [F]or purposes of computing [Uptown's] pro rata share of those Basic Costs excluded from the 6% cap in Paragraph 1(b) of the Lease, [Uptown] was only obligated to pay Gaedeke for any increase in those Basic Costs since the first year of the lease term; and for purposes of computing [Uptown's] pro rata share of controllable Basic Costs, controllable Basic Costs of the first calendar year of the Lease term was capped to 110% of Gaedeke's estimate of [Uptown's] first year Basic Costs, which was $1,018.00.

But this conclusion is not consistent with the Lease.

First, the trial court's conclusion ignores a computation to which the Lease refers—"[Uptown's] Pro Rata Share of Basic Costs[,]" a necessary figure in Uptown's computation of rent—and instead refers to a computation to which the Lease does not,[12] which Gaedeke argues changes the nature of the Lease.[13]

Second, the conclusion both narrows and expands the Lease as to the $1,018 estimate and 110 percent cap. It narrows the Lease by referring to those figures only in connection with "controllable Basic Costs," a limit not used in the Lease in

---

[12] The trial court refers to a computation for Uptown's "pro rata share of controllable Basic Costs," a phrase that does not appear in the Lease.

[13] The Lease states (emphasis added):

> For purposes of computing [Uptown's] Pro Rata Share of Basic Costs, Basic Costs (excluding those costs attributable to real and personal property taxes and assessments, insurance costs, utility services, and security costs) in any calendar year will not increase by more than 6% compounded annually over *controllable Basic Costs* of the first calendar year of the Term . . . ,

In practical effect, the trial court's conclusion adds the phrase "Tenant's Pro Rata Share of" prior to the emphasized language above, which is inconsistent with the Lease terms. Gaedeke argues the trial court's conclusion changes the nature of the Lease from a triple net lease to a base-year lease, which Uptown disputes, but we need not decide that question in order to resolve Gaedeke's first issue.

–10–

connection with those figures.[14]  It expands the Lease by ignoring that the time period to which these figures apply is limited,[15] thereby perpetuating and making unlimited an estimate and cap that are limited to a particular time period in the Lease.

We conclude the trial court erred as a matter of law in interpreting the Lease as reflected in its conclusion quoted herein.  Under the Lease, the fixed amount Uptown paid in the first calendar year of the Lease term does not have any effect on the computation of Uptown's "Pro Rata Share of Basic Costs" after the first calendar year, and in years two and beyond, Uptown's "Pro Rata Share of Basic Costs" is based on Gaedeke's Basic Costs in 2016, subject only to the 6 percent year-over-year limitation on increases to Gaedeke's controllable Basic Costs in 2016.

We sustain Gaedeke's first issue.  As a result, we need not reach its second issue or Uptown's cross-issue.

### III. CONCLUSION

We reverse the judgment in favor of Uptown and order it take nothing on its claims for breach of contract, declaratory relief, and attorney's fees and remand to the trial court for re-entry of judgment consistent with our opinion as it relates to Gaedeke's breach of contract and declaratory judgment claims and for a

---

[14] The Lease refers to the $1,018 estimate and 110 percent cap in connection with Uptown's "Pro Rata Share of Basic Costs[,]" a phrase that is specifically defined in the Lease and that is distinct from the phrase used by the trial court.

[15] The Lease states Uptown "shall not be obligated to pay more than 110% of [$1,018] for each month from the Commencement Date through the last month of the first calendar year of the Lease."

determination of Gaedeke's entitlement, if any, to attorney's fees.  We otherwise

affirm the trial court's judgment.


/Ken Molberg/
201048f.p05     KEN MOLBERG
            JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

GAEDEKE HOLDINGS II, LTD.,
Appellant

No. 05-20-01048-CV      V.

CHAIT AND HENDERSON, P.C.
D/B/A UPTOWN VISION, Appellee

On Appeal from the 44th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-18-03350.
Opinion delivered by Justice
Molberg. Justices Schenck and
Pedersen, III participating.

In accordance with this Court's opinion of this date, we **REVERSE** the judgment in favor of Uptown and order it take nothing on its claims for breach of contract, declaratory relief, and attorney's fees against Gaedeke; **REMAND** to the trial court for re-entry of judgment consistent with our opinion as it relates to Gaedeke's breach of contract and declaratory judgment claims and for a determination of any attorney's fees to which Gaedeke may be entitled; and otherwise **AFFIRM** the trial court's judgment.

It is **ORDERED** that appellant GAEDEKE HOLDINGS II, LTD. recover its costs of this appeal from appellee CHAIT AND HENDERSON, P.C. D/B/A UPTOWN VISION.

Judgment entered this 29th day of December, 2022.